**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| UNITED TWENTY-FIFTH BUILDING, LLC., | CASE NO. 1:19CV1356 |
| Plaintiff, | JUDGE CHRISTOPHER A. BOYKO |
| vs. | |
| RUOFF MORTGAGE CO., INC., | OPINION AND ORDER |
| Defendant. | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on Defendant's Motion for Partial Summary Judgment (ECF # 18) and Plaintiff's Motion for Summary Judgment. (ECF # 20). For the following reasons, the Court grants, in part, Plaintiff's Motion and denies Defendant's Motion.

On June 12, 2019, Plaintiff United Twenty-Fifth Building, LLC. ("United") filed its Complaint with the Court, alleging Breach of Contract, Declaratory Judgment and Promissory Estoppel claims against Defendant Ruoff Mortgage Co. Inc. ("Ruoff"). United alleges it is an Ohio-based, limited liability company with all its members being Ohio citizens. Defendant Ruoff is an Indiana company. The Court has jurisdiction as the parties are diverse and the amount in controversy exceeds $75,000.

United is a commercial landlord and owns a building located at 2104 West 25th Street in Cleveland, Ohio. Ruoff is a residential mortgage company operating in five states. On or about April 30, 2018, United alleges it entered into a Lease Agreement ("Lease") with Ruoff wherein

Ruoff agreed to lease approximately 4,000 square feet of space on the first floor of United's West 25th Street building for an initial term of ten years. The aggregate first year base rent was for $96,000, with rent escalating through the term with the tenth year aggregate rent at $134,000.

In Section 8C of the Lease, United agreed to make certain improvements to the property, including the construction of demising walls and stubbing utilities to the premises. Likewise, Ruoff agreed to perform certain build-out work to the premises and, pursuant to Section 8D of the Lease, United would provide Ruoff $180,000 to aid Ruoff in performing its build-out obligations. In due course, United completed its contractual building obligations and informed Ruoff it could begin its build-out work.

Under the terms of the Lease, Ruoff was to obtain a cost estimate for its work. If the estimate exceeded the amount provided by United, then Ruoff could elect to scale back its contractually obligated work and obtain new Plans and Specifications. Ruoff obtained a cost estimate but never began to perform its contractual build-out requirements due to the excessive amount of the cost estimates.

Under the terms of the Lease, the date Ruoff could take possession or, as the Lease defines it, the "Possession Date," occurs when United substantially completed its contractually obligated work. Also, under the Lease, Ruoff's first rent payment was due within one hundred and twenty days of either Ruoff opening for business to the public on the premises or the Possession Date; whichever came first. United alleges rent became due on April 2019, yet Ruoff has failed to remit any rent payments and is in breach of the Lease, despite United sending Ruoff a notice of nonpayment of rent as required under the Lease. In addition, United timely sent Ruoff a Notice of Default as required under the Lease.

**United's Motion for Summary Judgment**

According to United, it performed all its obligation under the Lease, including expending hundreds of thousands of dollars to improve the subject premises only for Ruoff to breach the Lease. The Lease lays out those improvements to made by United as "Landlord's Work," and Ruoff's as "Tenant's Work." United began its Landlord's Work in April 2018. The work lasted nine months and cost United $399,600.84. Under the terms of the Lease, once United substantially completed its work, it was to notify Ruoff, which United did on December 13, 2018.

Per the terms of the Lease, once Landlord's Work was substantially completed and notice was provided, Ruoff was required to obtain cost estimates for Tenant's Work. United was obligated to retain an architectural firm to prepare Plans and Specifications and contribute up to $180,000 to aid Ruoff in completing Tenant's Work. Ruoff submitted the preliminary Plans to the City of Cleveland Building Department for approval. After some modifications to the Plans were made in accordance with the City of Cleveland's requirements, Ruoff bid the Plans and received cost estimates in excess of $400,000. Ruoff sought to renegotiate the Lease to lower the costs of Tenant's Work, as it had underestimated its costs. The parties negotiated but could not come to an acceptable modification of the Lease. Since talks failed, Ruoff has ceased to comply with its Lease obligations, including obtaining new cost estimates for Tenant's Work, failing to take possession of the premises, failing to pay any cost overruns for Tenant's Work and failing to pay rent, resulting in breach.

**Ruoff's Motion for Partial Summary Judgment**

Ruoff moves for Partial Summary Judgment on United's Breach of Contract and

Declaratory Judgment claims, contending the parties did not have an enforceable Lease Agreement. Ruoff contends the purported Lease contemplated further agreements by the parties concerning the work Ruoff was to perform. Because the Lease is an unenforceable "agreement to agree" and contains a condition precedent that was never completed, Ruoff was under no obligation to perform.

In particular, Ruoff alleges Section 8 of the Lease required United and Ruoff to agree on the scope of Tenant's Work and Ruoff had to agree to a Work Cost Estimate concerning Tenant's Work. Section 8A of the Lease holds that United must deliver possession of the premises, subject to the provisions of Section 8, which includes the provision that Ruoff may request revisions to the Work Cost Estimate should it exceed United's contribution. All estimates obtained by Ruoff greatly exceeded the amount of United's contribution.

Also, Section 8B of the Lease required the parties to agree on Tenant's Work. Because the parties were unable to reach such an "agreement to agree," the Lease is unenforceable. Furthermore, United could not deliver to Ruoff the premises as delivery was dependent on the parties agreeing to the scope of Tenant's Work along with the Work Cost Estimate, which never happened.

Moreover, Ruoff's ability to find an acceptable Work Cost Estimate was a condition precedent to the obligations under the Lease. Consequently, because the parties never agreed on a final Work Cost Estimate, a condition precedent to triggering Ruoff's rent obligation, the Lease is unenforceable.

## LAW AND ANALYSIS

**Standard of Review**

Summary judgment shall be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). The burden is on the moving party to conclusively show no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy. Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). The moving party must either point to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials" or show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *See* Fed. R. Civ. P. 56(c)(1)(A), (B). A court considering a motion for summary judgment must view the facts and all inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Once the movant presents evidence to meet its burden, the nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim. *Celotex*, 477 U.S. at 324; *Lansing Dairy*, 39 F.3d at 1347.

This Court does not have the responsibility to search the record *sua sponte* for genuine issues of material fact. *Betkerur v. Aultman Hospital Ass 'n.*, 78 F.3d 1079, 1087 (6th Cir. 1996); *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404-06 (6th Cir. 1992). The burden

5

falls upon the nonmoving party to "designate specific facts or evidence in dispute," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); and if the nonmoving party fails to make the necessary showing on an element upon which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. Whether summary judgment is appropriate depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

This dispute involves the overarching question whether the Lease is an enforceable contract or an unenforceable "agreement to agree." Ruoff further asserts the Lease is unenforceable as it contains a condition precedent that was never fulfilled.

**<u>Agreement to Agree</u>**

There is no dispute that Ohio law governs the interpretation of the Lease as it contains a choice of law clause that Ohio law would govern the Lease. Under Ohio law, "the elements for a breach of contract are that a plaintiff must demonstrate by a preponderance of the evidence that (1) a contract existed, (2) the plaintiff fulfilled his obligations, (3) the defendant failed to fulfill his obligations, and (4) damages resulted from this failure." *Anzalaco v. Graber,* 970 N.E.2d 1143, 1148 (Ohio Ct.App.2012). When interpreting a contract, the Court's purpose "is to ascertain and give effect to the intent of the parties." *Foster Wheeler Enviresponse, Inc. v. Franklin Cnty. Convention Facilities Auth.,* 78 Ohio St.3d 353, 361, 678 N.E.2d 519 (Ohio 1997). The general presumption under Ohio law is that the parties' intent resides within the four corners of the contract to be construed. *Id.* "Common words appearing in a written instrument

will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." *Id.* (internal quotations omitted).

"[T]he interpretation of written contract terms, including the determination of whether those terms are ambiguous, is a matter of law for initial determination by the court." *Savedoff v. Access Grp., Inc.,* 524 F.3d 754, 763 (6th Cir.2008) (applying Ohio law). "[I]n cases where ambiguity exists, interpretation of the parties' intent is a question to be determined by the trier of fact." *Schafer v. Soderberg & Schafer,* 196 Ohio App.3d 458, 477, 964 N.E.2d 24 (Ohio Ct.App.2011) (internal quotations omitted); see also *PNC Bank, N.A. v. May,* No. 98071, 2012 WL 4243807, at *2 (Ohio Ct.App. Sept. 20, 2012) ("If ... the contract is ambiguous, ascertaining the parties' intent constitutes a question of fact that may require the consideration of parol evidence.").

"Contractual language is ambiguous only where its meaning cannot be determined from the four corners of the agreement or where the language is susceptible of two or more reasonable interpretations." *Covington v. Lucia*, 151 Ohio App.3d 409, 414, 784 N.E.2d 186 (Ohio Ct.App.2003) (internal quotations omitted). "[W]here a contract is ambiguous, a court may consider extrinsic evidence to ascertain the parties' intent." *Westfield Ins. Co. v. Galatis,* 100 Ohio St.3d 216, 219, 797 N.E.2d 1256 (Ohio 2003) see also *Mulch Mfg., Inc. v. Advanced Polymer Sols.,* LLC, 947 F. Supp. 2d 841, 857–58 (S.D. Ohio 2013).

The Lease contains all the hallmarks of an enforceable agreement. It contains an offer to lease the subject premises by United in exchange for monthly rental payments to United by Ruoff. The Lease is for a defined term of ten years and the rental payments are specified. The

Lease is twenty-seven pages and comprehensively covers matters regarding parking, insurance, subrogation and default. The Lease was undisputedly signed by both parties.

None of these provisions are in dispute. What is in dispute is the effect of Section 8 of the Lease on the enforceability thereof. Section 8 concerns the respective obligations of Landlord (United) and Tenant (Ruoff) for preparing the subject property for Ruoff's commercial use. There is no dispute that United completed its construction obligations under the Landlord's Work section of the Lease at considerable expense.

Ruoff alleges the Lease is an "agreement to agree" because it requires additional agreements before Ruoff could fulfill its obligations under the Tenant's Work Section. Ruoff cites to Section 8A of the Lease which reads:

> Within thirty (30) days after the Effective Date of the Lease, the parties shall agree upon a preliminary description of the Tenant's Work, which shall be attached to the Lease as Exhibit D. Within sixty (60) days following the Effective Date of the Lease, the parties shall agree upon final plans and specifications for each of Landlord's Work and Tenant's Work, provided that the parties shall use reasonable efforts to expedite such review and approval process. ("Plans and Specifications"). The parties acknowledge and agree that such Plans and Specifications shall be collectively completed within the aforesaid time period, but completion of the Plans and Specification for Tenant's Work shall not be a condition precedent to Landlord's commencement of Landlord's Work. Included in the Plains and Specifications will be the civil, architectural and structural plans for the Landlord's Work and the Tenant's Work. ..

Exhibit D of the Lease is blank, supporting Ruoff's position that no agreement on the scope of Tenant's Work was reached.

Section 8D of the Lease provides that Ruoff "agrees to improve the Demised premises, with the improvements described upon Exhibit D, ("Tenant's Work"). Landlord agrees to contribute to the cost of Tenant's Work in a sum up to One Hundred Eighty Thousand ($180,000.00) (the Landlord Contribution).

8

Section 8C provides that, before Ruoff commences its Tenant's Work, Ruoff shall obtain cost estimates to complete the same based on the Plans and Specifications provided by the architectural firm paid by United. 8C further provides that in the event the Work Cost Estimate obtained by Ruoff exceeds United's $180,000 contribution, Ruoff "may, within ten (10) days after the receipt of the Work Cost Estimate, elect to scale back the Tenant's Work and require the Plans and Specifications to be revised and new estimates obtained." There is no evidence that Ruoff elected to scale back Tenant's Work.

So, what is the effect of the parties' failure to agree on the Work Cost Estimate and Tenant's Work under the Lease if, as is the case, they never agreed on the Plans and Specifications for Tenant's Work and no Exhibit D was agreed upon that would outline Tenant's Work on the premises?

The Court's reading of the Lease does not condition the commencement of rent or the obligations under the Lease upon the parties' agreement on the Work Cost Estimate nor the Tenant's Work. The Lease contains a specific timeline for commencement of rent under the Lease regardless of whether the parties agree on the Work Cost Estimate or Tenant's Work.

For example, Section 8A. begins, "landlord agrees to perform, or cause to be performed, at its sole cost and expense, such work in construction of the Demised Premises as may be set forth as Landlord's Work on Exhibit C, attached hereto and incorporated herein..." But the Lease expressly reads, "Landlord shall not have any obligation whatsoever to make any improvements in and to the Demised Premises or the Building, except as otherwise expressly provided in the attached Exhibit C." The Exhibit C attached to the Lease is acknowledged as a preliminary description of the Landlord's Work which was preliminarily approved by both

9

parties. (See 8.B.). Although preliminary, the Lease clearly limits United's obligations to only those found in the Exhibit C attached to the Lease. Once United substantially completed its work, the Lease required United to notify Ruoff of the completion, which results in the Possession Date. The Lease required the notice to be in writing. There is no factual dispute that United sent a written notice to Ruoff on December 13, 2018, that its work was substantially completed. Nor does Ruoff dispute that Landlord completed its work. In fact, at page 12 of its Brief in Opposition to United's Motion for Summary Judgment, Ruoff concedes that United completed its Landlord's work under the Lease. Under the Lease, "Substantially Completed or "Substantial Completion" shall be defined as the stage in the progress of the work when the work or designated portion thereof is sufficiently complete in accordance with the contract documents, or agreed plans and specifications so that Tenant can occupy or utilize the premises for its intended use (i.e. as to Landlord's Work, to permit Tenant's or its contractor to commence construction of that portion of Tenant's Work to be performed by Tenant and its contractor...(4.A.).

The Lease then calls for the parties to jointly inspect the premises and, allowed Ruoff to submit a punchlist of items it required United to complete before Possession. There is no evidence Ruoff ever submitted a punchlist nor did they challenge the completion of United's Work.

Pursuant to the Lease, once the Possession date is triggered, that in turn starts the clock on the Commencement/Rent Commencement Date. This is defined as "the first to occur of (i) the date that is one hundred twenty (120) days after the Possession Date; and (ii) the date Tenant opens for business to the general public at the Premises." (Lease Section 4A.). Thus, purely by

the passing of the one hundred and twenty days, Ruoff's rent obligation was triggered.

Ruoff contends that the Work Cost Estimate and Tenant's Work provisions of the Lease act as an "agreement to agree" as they expressly contemplate the parties will further agree on the scope of Tenant's Work and Tenant has the opportunity to 'scale back" its work and request new Plans and Specifications. In addition, Ruoff argues these requirements act as a condition precedent to Ruoff's obligations under the Lease to pay Rent.

**Condition Precedent**

Ohio law defines a condition precedent as "one that is to be performed before the agreement becomes effective. It calls for the happening of some event, or the performance of some act, ... before the contract shall be binding on the parties." *Mumaw v. Western & Southern Life Ins.,* 97 Ohio St. 1, 119 N.E. 132, 135 (1917); see also *Ohio Nat'l Life Assurance Corp. v. Satterfield,* 194 Ohio App.3d 405, 956 N.E.2d 866, 870 (2011). ("A condition precedent is an act or event, other than a lapse of time, which must exist or occur before a duty of immediate performance of a promise arises." Ohio law "disfavors precedent." *Ramsey v. Penn Mut. Life Ins. Co.,* 787 F.3d 813, 822 (6th Cir. 2015) *quoting Evans, Mechwart, Hambleton & Tilton, Inc. v. Triad Architects, Ltd.,* 196 Ohio App.3d 784, 965 N.E.2d 1007, 1013 (2011). "Consequently, absent an explicit intent to establish a condition precedent, courts will not interpret a contractual provision in that manner...." *Id.* at 1014.

Here, there is nothing in the plain language of the contract that makes the Work Cost Estimate or Tenant's Work a condition precedent to the effective date of the Lease or the obligation to pay rent. Instead, the rent obligation is tied solely to Landlord's Work. In fact, the Lease reads specifically:

11

"The parties acknowledge and agree that such Plans and Specifications shall be collectively completed within the aforesaid time period, but completion of the Plans and Specification for Tenant's Work shall not be a condition precedent to Landlord's commencement of Landlord's Work." (8.B.). Because Possession and Commencement of Rent run from the Landlord's Work, the Lease does not place a condition precedent on Tenant's Work or obtaining a Work Cost Estimate. In fact, the Lease is silent about the effect of a failure to agree on the scope of Tenant's Work or a cost estimate. Because these are two sophisticated businesses, should they have intended to make agreement on the Work Cost Estimate or Tenant's Work a condition precedent to the rent obligation, they could have written it into the Lease as the clear condition precedent language of 8B. demonstrates. However, there is nothing in the Lease that conditions the rent obligation or Possession date on the parties' agreement on the Work Cost Estimate or scope of Tenant's Work.

Finally, the Lease expressly reads under 8D. Tenant's Work, "In all events, tenant shall commence the installation of fixtures, equipment, and any of Tenant's Work promptly following the Possession Date and shall diligently prosecute such installation to completion."

Therefore, the Court finds the Lease is an enforceable agreement.

There is no dispute that United completed its Landlord's Work at considerable expense nor is there any dispute that Ruoff has failed to pay rent in accordance with the rent commencement date. Therefore, United has proven a breach of contract by Ruoff.

Because United acknowledges that a hearing would be useful in determining the full extent and scope of its damages, the Court denies United's request for a damages determination until the Court holds a damages hearing.

12

Therefore, for the foregoing reasons, the Court grants, in part United's Motion and denies Ruoff's Motion.

IT IS SO ORDERED.


Date: November 23, 2020        /S/Christopher A. Boyko
                               CHRISTOPHER A. BOYKO
                               Senior United States District Judge